Argued and submitted February 23, a peremptory writ will issue July 28, 2022

STATE OF OREGON,
*Plaintiff-Adverse Party,*

*v.*

RANDY GRAY,
*Defendant-Relator.*

(CC 21CR19107) (SC S068673)

515 P3d 348

In an original mandamus proceeding before the Oregon Supreme Court, relator, a criminal defendant who had already been charged with a felony by district attorney's information, invoked his statutory right under ORS 132.320(12) to appear before the grand jury that was considering whether to indict him on felony charges. Relator also sought to have his counsel present in the grand jury room during his testimony. After the trial court denied his motion to allow counsel to appear, relator sought mandamus relief from this court, and the Court issued an alternative writ. *Held*: (1) Once the state constitutional right to counsel under Article I, section 11, of the Oregon Constitution, has attached, a defendant generally has the right to have counsel present during a proceeding when the presence of counsel could protect the defendant against prejudice as to the criminal charges; (2) a defendant voluntarily testifying before the grand jury under ORS 132.320(12) will be questioned by district attorney under oath, with testimony recorded and available for use against the defendant at trial; (3) without counsel's presence, defendant might be prejudiced by accidentally waiving an evidentiary privilege, making statements against interest, or presenting testimony in a way that contradicts (or seemingly contradicts) any later testimony at trial; and (4) accordingly, relator here is entitled to have his counsel present in the grand jury room during his testimony.

A peremptory writ will issue.

En Banc

Original proceeding in mandamus.*

Rian Peck, Visible Law LLC, Portland, argued the cause and filed the brief for defendant-relator. Also on the brief was Christopher Marin Hamilton, CBMH Law, Portland.

Paul L. Smith, Deputy Solicitor General, Salem, argued the cause and filed the brief for plaintiff-adverse party. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

_____

* On petition for alternative writ of mandamus from an order of the Multnomah County Circuit Court, Angel Lopez, Judge.

Cassidy Rice, Portland, filed the brief for *amici curiae* American Civil Liberties Union of Oregon and Oregon Criminal Defense Lawyers Association.

GARRETT, J.

A peremptory writ will issue.

**GARRETT, J.**

This matter is before us as an original mandamus proceeding. *See* Or Const, Art VII (Amended), § 2. Relator invoked his statutory right to appear before the grand jury that was considering whether to indict him on felony charges. Relator also sought to have his counsel present in the grand jury room during his testimony. After the trial court denied his motion to allow counsel to appear, relator sought mandamus relief from this court. We allowed an alternative writ and now conclude that, on the facts presented here, Article I, section 11, of the Oregon Constitution entitles relator to have his counsel present in the grand jury room during his testimony.

## I.   FACTS

The relevant facts are procedural and undisputed.

Relator is the defendant in the underlying case in Multnomah County Circuit Court. In April 2021, he was charged by district attorney's information with (among other things) the felony of assaulting a public safety officer, ORS 163.208.

A district attorney's information may initiate a felony prosecution. *See* ORS 131.005(9)(a), (b) (defining "district attorney's information"); Or Const, Art VII (Amended), § 5(4), (5) (listing circumstances when information may serve as accusatory instrument). With certain exceptions, however, felony charges can go to trial only on indictment by the grand jury. Or Const, Art VII (Amended), § 5(3) (a person may be charged with a felony "only on indictment by a grand jury").

Shortly after the information was filed, relator's defense counsel notified the district attorney that relator intended to appear as a witness before the expected grand jury proceeding. Such an appearance is authorized by ORS 132.320(12)(a), which provides, in part:

> "A defendant who has been arraigned on an information alleging a felony charge that is the subject of a grand jury proceeding and who is represented by an attorney has a right to appear before the grand jury as a witness if, prior

to the filing of an indictment, the defense attorney serves upon the district attorney written notice requesting the appearance."

In addition to giving notice that relator would exercise his statutory right to appear, relator's counsel later emailed the district attorney, expressing relator's desire to have his counsel present in the grand jury room and asserting that he had a right to the presence of counsel under the Sixth Amendment to the United States Constitution. The district attorney did not agree to counsel being in the grand jury room.

Relator then filed a motion in the trial court for an order allowing counsel to attend. He noted that his right to counsel had already attached. He contended that the Sixth Amendment to the United States Constitution meant that the exercise of his statutory right to testify before the grand jury carried with it a right to have counsel present. A defendant has a right to the presence of counsel at all "critical stages" of a criminal prosecution. *See, e.g.*, *Rothgery v. Gillespie County*, 554 US 191, 212 & n 16, 128 S Ct 2578, 171 L Ed 2d 366 (2008) (summarizing "critical stages"). Relator's written argument asserted a right to counsel only under the federal constitution; he did not, at that time, assert any claim under state law.

The state objected to the motion on the ground that, by statute, grand jury proceedings are closed to all but certain designated persons, of whom a witness's attorney is not one. *See* ORS 132.090(1) (subject to certain limited exceptions, "no person other than the district attorney or a witness actually under examination shall be present during the sittings of the grand jury"). In the state's view, while ORS 132.320(12) allowed relator to testify, it did not provide for relator's counsel to be admitted into the room, and the legislative history showed that the legislature did not expect counsel to be allowed entry. The state contended that relator's constitutional argument was incorrect under *State v. Miller*, 254 Or 244, 249, 458 P2d 1017 (1969) (grand jury is a "closed and nonadversary proceeding").

At the hearing, relator made the additional argument that the Oregon Constitution gave him the right to

have his counsel present in the grand jury room. He also expanded on his contention about what that right entailed, arguing for the first time that his counsel could not only be present but could take an active role, including objecting to questions and directing relator not to answer questions.

The trial court denied relator's motion, ruling that relator's exercise of his statutory right to appear before the grand jury did not entitle him to have his counsel present in the room with him, but that counsel could wait outside and be available for consultation.

Relator then filed this proceeding, seeking a writ of mandamus directing the trial court to grant his motion. We allowed an alternative writ, and after briefing and argument, the matter is now before us. Relator contends that the trial court erred, and that relator's appearance before the grand jury, though voluntary, is nonetheless a "critical stage" of the prosecution that entitles him to have his counsel present in the grand jury room. The state argues that the legislature, in enacting the statute that gives relator the right to testify, did not create a *statutory* right to have counsel present, and that relator's exercise of his statutory right to appear does not trigger a *constitutional* right to have his counsel present in the room with him.

## II.   DISCUSSION

A.   *Overview of Grand Juries in Oregon*

"The origin of the grand jury is veiled in obscurity." *State v. Gortmaker*, 295 Or 505, 510, 668 P2d 354 (1983), *cert den*, 465 US 1066 (1984) (footnote omitted); *see id*. at 510-12 (reviewing available history). The cases agree, however, that the grand jury serves a "high function," not only of bringing to trial those persons justly accused of crimes, but also of safeguarding the citizenry against arbitrary, malicious, or unfounded prosecutions. *Id*. at 512; *see United States v. Mandujano*, 425 US 564, 571, 96 S Ct 1768, 48 L Ed 2d 212 (1976) (describing grand jury as "an integral part of our constitutional heritage" whose "historic office has been to provide a shield against arbitrary or oppressive action, by insuring that serious criminal accusations will be brought only upon the considered judgment of a representative body

of citizens acting under oath and under judicial instruction and guidance"); *State v. Burleson*, 342 Or 697, 703, 160 P3d 624 (2007) (grand jury "serves a crucial role in protecting individual liberties" by being "a brake on the state's potential abuse of the accusatory process").

The institution of the grand jury is provided for in the Oregon Constitution, which also gives the legislature authority to enact implementing legislation. *See* Or Const, Art VII (Amended), § 5(1)(b) (permitting legislature to enact statutes for "[d]rawing and summoning grand jurors").

The grand jury is composed of seven persons sworn to inquire of crimes committed or triable in the relevant county. Or Const, Art VII (Amended), § 5(2); ORS 132.010. The crimes may be submitted to the grand jury by the district attorney, ORS 132.330, or by a member of the grand jury, ORS 132.350.

In Oregon, a felony may be charged initially by the mechanism of either a grand jury indictment or a district attorney information. *See* ORS 131.005(9)(b) (for felonies, district attorney information "serves to commence an action, but not as a basis for prosecution thereof"). With certain exceptions, however, felony charges in the state can only go to trial on indictment by the grand jury. Or Const, Art VII (Amended), § 5(3) (a person may be charged with a felony "only on indictment by a grand jury"). The exceptions are where the person waives indictment, *id*. § 5(4), or after a preliminary hearing where a magistrate finds probable cause that the person committed a crime punishable as a felony, *id*. § 5(5) (or the person waives a preliminary hearing).

The grand jury considers whether "all the evidence before it, taken together, is such as in its judgment would, if unexplained or uncontradicted, warrant a conviction by the trial jury." ORS 132.390. If the grand jury decides to indict, then it endorses the indictment as a "true bill." ORS 132.400. If the grand jury decides not to indict, then it endorses the indictment as "not a true bill," the effect of which is to dismiss any pending charge against the defendant. ORS 132.430. Five grand jurors must concur to indict a defendant. Or Const, Art VII (Amended), § 5(2); ORS 132.360.

The grand jury hears the testimony of witnesses under oath. *See* ORS 132.100 (requiring foreperson to administer oath to any witness). The testimony is recorded and, in some circumstances, may be used as evidence against the defendant at trial. ORS 132.250(1)(a) (district attorney's duty to have proceedings recorded); ORS 132.260(1)(b), (c) (record must include "[t]he name of each witness appearing before the grand jury" and "[e]ach question asked of, and each response provided by, a witness"); ORS 132.270(7)(a) (permitting recording to be used as provided in several identified sections of the Oregon Evidence Code).

The district attorney[1] has an active role in grand jury proceedings. The district attorney is required to "attend upon and advise the grand jury when required." ORS 8.670. He or she may submit indictments to the grand jury. ORS 132.330.

In general, the district attorney conducts the examination of witnesses before the grand jury. ORS 132.340 ("when required by the grand jury," the district attorney "must *** attend its sittings *** to examine witnesses in its presence"). The district attorney is thus excepted from the prohibition against persons being present when the grand jury is taking testimony:

> "Except as provided in subsections (2) and (3) of this section and ORS 132.250 and 132.260, no person other than the district attorney or a witness actually under examination shall be present during the sittings of the grand jury."

ORS 132.090(1).[2] The grand jurors are not required to rely on the district attorney's questioning, however; they may question the witnesses themselves. *See Miller*, 254 Or at 249 (noting that person testifying before grand jury would be "subject to questioning by the district attorney and the grand jurors").

---

[1] A deputy district attorney may also perform that duty. *See* ORS 8.780 ("[S]ubject to the direction of the district attorney, [a deputy district attorney] has the same functions as the district attorney.").

[2] An interpreter may attend. ORS 132.090(3). If approved by the circuit court, a child up to the age of 12 or an intellectually disabled person may be accompanied by a parent or guardian. ORS 132.090(2). To address a witness's needs, the circuit court may also authorize a guard or medical or special attendant to attend. *Id*.

B.    *Defendant's Statutory Right to Testify Before Grand Jury*

      The case before us arises from a relatively recent statutory change to grand jury proceedings. In 2015, the legislature granted defendants the right, codified at ORS 132.320(12), to appear and testify in grand jury proceedings when a defendant has been arraigned on a felony allegation and is represented by counsel. It is undisputed that relator gave proper written notice of his intention to exercise that right. The dispute concerns whether relator's exercise of that right carries with it a right to have his counsel present in the grand jury room during relator's testimony. In the discussion below, we begin with the legislature's enactment of the statute in 2015. Although neither party argues that that statute directly or fully answers the constitutional right-to-counsel question, it is relevant context for our consideration of that question. *See State v. Davis*, 350 Or 440, 478, 256 P3d 1075 (2011) (when right to counsel has attached, court "evaluate[s] the particular circumstances, the nature of the evidence, and the like to determine the scope of the right to counsel" (citations omitted)).

      The relevant statutory text regarding a defendant's right to testify is contained in ORS 132.320(12). That subsection provides:

> "(12)(a)  A defendant who has been arraigned on an information alleging a felony charge that is the subject of a grand jury proceeding and who is represented by an attorney has a right to appear before the grand jury as a witness if, prior to the filing of an indictment, the defense attorney serves upon the district attorney written notice requesting the appearance. The notice shall include an electronic mail address at which the defense attorney may be contacted.

> "(b)  A district attorney is not obligated to inform a defendant that a grand jury proceeding investigating charges against the defendant is pending, in progress or about to occur.

> "(c)  Upon receipt of the written notice described in paragraph (a) of this subsection, the district attorney shall provide in writing the date, time and location of the defendant's appearance before the grand jury to the defense

attorney at the indicated electronic mail address. In the event of a scheduling conflict, the district attorney shall reasonably accommodate the schedules of the defendant and the defense attorney if the accommodation does not delay the grand jury proceeding beyond the time limit for holding a preliminary hearing described in ORS 135.070(2).

"(d)   Notwithstanding ORS 135.070 and paragraph (c) of this subsection, in order to accommodate a scheduling conflict, upon the request of the defendant the time limit for holding a preliminary hearing described in ORS 135.070(2) may be extended by a maximum of an additional five judicial days and the district attorney and the defendant may stipulate to an extension of greater duration. During a period of delay caused by a scheduling conflict under this subsection, ORS 135.230 to 135.290 shall continue to apply concerning the custody status of the defendant."

Textually, ORS 132.320(12) does not address whether defense counsel may be present in the grand jury room when the defendant testifies. But defense counsel has a central role in the entire right. To begin with, the very existence of the right to testify is made contingent on the defendant having defense counsel. ORS 132.320(12)(a) (defendant's right to testify applies only if defendant "is represented by an attorney"). It is defense counsel who is authorized to give the district attorney notice if the defendant wants to testify. *Id*. It is defense counsel who receives the notice from the district attorney of when the defendant will appear. ORS 132.320(12)(c). In the event of a scheduling conflict, the district attorney must reasonably accommodate the schedules of both the defendant and defense counsel. *Id*. The role accorded to defense counsel—especially the last point, that the district attorney must make efforts to schedule the defendant's testimony in a manner that also accommodates the schedule of defense counsel—at least raises the question whether the legislature expected that defense counsel would be present in the grand jury room for the defendant's testimony.

That possible inference from the text, however, is countered by the statutory context. The legislature has been quite clear in identifying who may, and who may not, be present in the grand jury room. *See* ORS 132.090 (so providing).

No statutory provision authorizes a witness to have counsel present in the room.

The legislative history of ORS 132.320(12) confirms that conclusion. The statutory right to testify set out in ORS 132.320(12) was introduced as Senate Bill (SB) 825 (2015), and enacted by Oregon Laws 2015, chapter 586, section 1 (it has not been amended since). The testimony indicated that there was an existing but varying practice in Oregon of allowing defendants to voluntarily testify before a grand jury. If a defendant asked to testify, district attorneys would often grant the request.[3] The concern was that it was not a consistent practice; the statute was intended to formalize the practice and make it uniform.

The legislative history is clear on the issue before us: Although the legislature intended to formalize a defendant's right to appear before the grand jury and testify, that intent did not include the right to have counsel present in the room during that testimony. More than one legislator commented on that aspect of the bill. For example, at a public hearing before the House Committee on the Judiciary, Representative Barton confirmed that the bill made no provision for defense counsel in the room:

> "Just in case the Court of Appeals ever reviews this transcript, I want to be very clear that the bill that we are reviewing right now does not provide defense counsel entry into the grand jury room."

Audio Recording, House Committee on Judiciary, SB 825, May 13, 2015, at 0:24:25 (statement of Rep Brent Barton), https://olis.oregonlegislature.gov (accessed July 21, 2022).

---

[3] The practice had been noted in passing in *Miller*, 254 Or at 249 (mentioning possibility that a defendant might "voluntarily testify" before grand jury). The witnesses before the legislature agreed that it happened; they disagreed only on how frequently a prosecutor declined to let the witness testify. *Compare* Audio Recording, House Committee on Judiciary, SB 825, May 13, 2015, at 0:30:45 (statement of Jeff Howes, First Assistant to Multnomah County District Attorney), https://olis.oregonlegislature.gov (accessed July 21, 2022) ("[I]f the defense attorney would make that overture, 'my client would like to come testify,' I don't know of a prosecutor personally that would turn that down."), *with id*. at 0:49:20 (statement of Jason Short) ("I've asked for my clients to testify before the grand jury, and that's been denied. *** I've also asked, and it's been accommodated.").

He then expressed his concern about the absence of counsel when the defendant would be testifying under oath:

> "It's in the interest of the accused that I am extremely reluctant. I've never practiced criminal defense law. But you don't have to be Clarence Darrow to figure out that having your client cross-examined on record under oath, in ways that are coming in at trial, without you being there, only bad things can happen. And it just seems like there's no better way for an innocent person to go to jail than for them to go in and do this. It makes me extremely nervous on behalf of your clients."

*Id*. at 0:25:30. Gail Meyer, appearing as a witness on behalf of the Oregon Criminal Defense Lawyers Association (OCDLA), responded:

> "This is a reform that is very much embraced by the National Association of Criminal Defense Lawyers, and the American Bar Association got there first [*i.e.*, had already proposed it]. And the reason is, once the indictment is returned, all hell breaks loose. I mean it just does. And if there is an explanation that can be provided by the target of the grand jury—'consider this from my vantage point, I understood that I was under fear of bodily harm if I didn't do X'—that is something for the grand jury to consider before the indictment. And so this is a reform that is very much embraced. And again, it's embraced by a wide spectrum of organizations. But it's fully vetted by the defense bar and it's a national concern. And there are some states that are doing this. And again, Representative Barton—*** this does occur in Oregon. It's not like we're inventing an opportunity that doesn't happen. What the bill attempts to do is structure it, so that there isn't ad hoc, disparate application of this around the state."

*Id*. at 0:26:05.

The legislative history further shows that the legislature declined to have the defendant's testimony conducted in the form of direct and cross examinations. As introduced, the bill had permitted a defendant to first "give evidence" to the grand jury, then be examined by prosecutor and grand jury. The introduced bill would have amended ORS 132.320 to include a subsection (12)(e) providing:

> "When the defendant appears as a witness before the grand jury pursuant to this subsection, the defendant shall be permitted to give any relevant and competent evidence concerning the charges under consideration and, after giving evidence, is subject to examination by the district attorney and the grand jury."

SB 825 (2015), Introduced. That provision was deleted, however. *See* SB 825 (2015), House Amendments to A-Engrossed (June 1, 2015). As the legislative history shows, both the prosecutors' bar and the defense bar thought it was unnecessary, even without counsel in the room. The prosecution believed it would allow a defendant to engage in unconstrained speechmaking. Audio Recording, House Committee on Judiciary, SB 825, May 13, 2015, at 0:10:25 (statement of Gail Meyer, OCDLA) ("The district attorneys were concerned that this language allowed the defendant to simply give a monologue—their phrase, 'to speechify'—and *then* be subject to cross-examination." (Emphasis in original.)). The defense bar expected defense counsel to be working with the prosecutor before any testimony is given. Counsel would thus be aware if the prosecutor was likely to treat the defendant as a hostile witness and seek only to obtain incriminating confessions, and presumably counsel would then discourage the defendant from testifying.[4]

In summary, then, the legislative history confirms what the text and context suggest: The statutory right to appear before the grand jury does not also entail a statutory right to have counsel present in the grand jury room during the testimony. It also shows that the legislature expected the defendant to testify in the same manner as other witnesses.

C.   *State Constitutional Right to Counsel*

Having concluded that the statute giving relator the right to appear before the grand jury makes no provision for

---

[4] As Meyer would later testify:

"[U]sually you would never get your client in without having discussed this pretty much in-depth with the district attorney before you do it. And our thought is, if you really have a very hostile district attorney, you probably aren't going to agree to do this."

Audio Recording, House Committee on Judiciary, SB 825, May 13, 2015, at 0:42:15 (statement of Gail Meyer).

his counsel to be present, we turn to relator's constitutional arguments. As we will explain, we agree with relator that he has a state constitutional right to have his counsel present in the grand jury room during his testimony, although, contrary to relator's argument, that right is limited to having counsel advise and direct relator regarding his testimony. Because we conclude that such a right exists under the state constitution, and because relator does not argue that he would be entitled to any additional or greater relief under the federal constitution, we have no need to address relator's argument under the Sixth Amendment. *See State v. Cookman*, 324 Or 19, 32 n 15, 920 P2d 1086 (1996) (when court held that application of statute violated state constitutional prohibition against *ex post facto* laws, court did not need to consider whether it also violated federal prohibition against *ex post facto* laws); *State v. Medinger*, 235 Or App 88, 92 n 1, 230 P3d 76 (2010) (accepting argument that, "because the federal [legal] standard is less stringent" than Oregon law, determination that arrest was not supported by probable cause under Oregon law obviated need to reach federal question).

1.  *Overview*

The right to counsel is set out in Article I, section 11, of the Oregon Constitution.[5] It provides, in part:

"In all criminal prosecutions, the accused shall have the right * * * to be heard by himself and counsel[.]"

This court has repeatedly addressed the meaning of that provision, including in *Davis*, 350 Or 440, and *State v. Prieto-Rubio*, 359 Or 16, 376 P3d 255 (2016). In *Davis*, this court examined the provision's text, its history, and this court's prior case law interpreting it, then used the identified underlying principles to inform how the court should apply them to modern circumstances. *See Davis*, 350 Or at 446 (summarizing steps and citing

---

[5] We note that an implicit right to counsel is found in the right against self-incrimination in Article I, section 12, of the Oregon Constitution. *See*, *e.g.*, *State v. Scott*, 343 Or 195, 200, 166 P3d 528 (2007) (explaining that "[t]he right against self-incrimination [in Article I, section 12] includes a derivative right to counsel during custodial interrogation," and discussing cases). Relator makes no argument under Article I, section 12, and accordingly, we do not address it.

cases);[6] *id*. at 462-77 (analyzing those steps in connection with right to counsel under Article I, section 11). In *Prieto-Rubio*, this court followed *Davis* and applied it in a different context. Although the precise holdings of both cases are not on point, they analyzed the history and purposes of the right in a way that is helpful to considering the issue before us.

In brief: The right to counsel had been understood historically to focus on *trial*. *See Davis*, 350 Or at 464 (summarizing conclusions from text); *id*. at 468 (summarizing history); *id*. at 472-73 (summarizing early Oregon caselaw); *see also Prieto-Rubio*, 359 Or at 24 (same). Changes in the nature of criminal prosecutions and law enforcement, however, led first the United States Supreme Court and then this court to extend the right to certain pretrial proceedings. *Davis*, 350 Or at 469-71 (summarizing United States Supreme Court caselaw); *id*. at 473-76 (summarizing this court's prior caselaw); *see Prieto-Rubio*, 359 Or at 24-25 (same).

A defendant's right to counsel under both the state and federal constitutions generally begins when criminal proceedings have been initiated, at which point the right is said to attach. *See Davis*, 350 Or at 471 (discussing federal cases); *id*. at 473-77 (discussing state cases). Yet the attachment of the right to counsel is separate from the scope of that right: Even after the right has attached, not all pretrial proceedings require the presence of defense counsel. *Id*. at 471-72 (federal law); *id*. at 476-77 (state law). The right to have counsel *present* exists only as to those pretrial proceedings that implicate the need to protect a defendant's right to a fair trial.

---

[6] Earlier cases had addressed Article I, section 11, but *Davis* was the first to do so using the approach to constitutional interpretation summarized in *Priest v. Pearce*, 314 Or 411, 415-16, 840 P2d 65 (1992) (the "three levels" of analysis for a state constitutional provision are "[i]ts specific wording, the case law surrounding it, and the historical circumstances that led to its creation"). *See Davis*, 350 Or at 462 (noting that court had never previously applied that methodology to Article I, section 11). In applying that methodology, we seek "to understand the wording in the light of the way that wording would have been understood and used by those who created the provision, and to apply faithfully the principles embodied in the Oregon Constitution to modern circumstances as those circumstances arise." *State v. Hirsch / Friend*, 338 Or 622, 631, 114 P3d 1104 (2005), *overruled in part on other grounds by State v. Christian*, 354 Or 22, 40, 307 P3d 429 (2013) (internal quotation marks and citations omitted).

In *State v. Newton*, 291 Or 788, 636 P2d 393 (1981), *overruled in part on other grounds by State v. Spencer*, 305 Or 59, 750 P2d 147 (1988), a plurality of this court used language drawn from the United States Supreme Court's Sixth Amendment cases to express the relevant standard for when a defendant has a right to the presence of counsel under Article I, section 11:

> "Any pre-trial adversarial contact of the state and a defendant at which some benefit of counsel would be lost if counsel is not present, that is, at which the state's case may be enhanced or the defense impaired due to the absence of counsel, may be considered a critical stage of the prosecution at which defendant has a right to the presence of counsel."

*Newton*, 291 Or at 802-03 (giving as examples the surreptitious questioning of an indicted defendant, and the participation of a defendant in a post-indictment lineup identification). Later cases reiterate the same standard in different words, but always focusing on whether the absence of counsel would risk prejudice to the defendant's legal interests. *See State ex rel. Russell v. Jones*, 293 Or 312, 315, 647 P2d 904, 905 (1982) ("[A] criminal defendant's guarantee of the assistance of counsel exists at least at all court proceedings from arraignment through probation revocation as well as all post-indictment out-of-court critical stages where, without the assistance of counsel, the legal interests of the defendant might be prejudiced."); *State v. Sparklin*, 296 Or 85, 93, 672 P2d 1182 (1983) ("[O]nce a person is charged with a crime he or she is entitled to the benefit of an attorney's presence, advice and expertise in any situation where the state may glean involuntary and incriminating evidence or statements for use in the prosecution of its case against defendant."); *Prieto-Rubio*, 359 Or at 25 ("[U]nder Article I, section 11, the scope of the right to counsel encompasses stages in criminal proceedings in which counsel's presence could prevent prejudice to a defendant.").

2. *Application*

In this context, one of the first questions to consider is whether there is a "criminal prosecution[]," because the text of Article I, section 11, makes the right to counsel

applicable only in that instance. It is not disputed that relator, having already been formally charged by a district attorney's information, is the accused in a criminal prosecution. It is also undisputed that relator's right to counsel has attached.

We turn, then, to the question whether relator's voluntary testimony before the grand jury is such that he has a right to have counsel present in the grand jury room during that testimony. We conclude that he does.

As a preliminary matter, we note that this situation appears to fall squarely within the text of Article I, section 11. In *State ex rel. Russell*, this court addressed whether the defendant had the right to the presence of counsel at a presentence interview before a probation officer. We began with what we called the "short answer." As Article I, section 11, provides that an accused has the right "to be heard by himself and counsel,"

> "[a] short answer, therefore, is that counsel cannot be excluded from any stage of the criminal prosecution at which a defendant is to be 'heard[.]'"

293 Or at 315.

Such a simplistic approach does not fully represent the more detailed legal test set out in our caselaw, discussed above. But it does offer some support for relator's position, which we now consider in light of that more detailed framework.

As noted above, a defendant generally has the right to the presence of counsel during a proceeding when the presence of counsel could protect a defendant against prejudice as to the criminal charges. *See Prieto-Rubio*, 359 Or at 25 (right to counsel exists where "counsel's presence could prevent prejudice to a defendant"); *Newton*, 291 Or at 802-03 (defendant has right to presence of counsel when "the state's case may be enhanced or the defense impaired due to the absence of counsel").

Here, relator will be questioned by the district attorney, and under oath. That testimony will be recorded, and it could be used against relator at trial. As sworn testimony in

response to the district attorney's questions, the proceeding has similarities to a defendant taking the stand at trial. The opportunities for prejudice are manifest: The defendant might waive an evidentiary privilege by failing to claim it, or he might make statements against interest, or he might present testimony in a way that contradicts (or seemingly contradicts) any later testimony at trial. The state is correct that the legislature, in enacting ORS 132.320(12), did not intend to convert the grand jury into an "adversarial" proceeding. And the legislative history reflects an expectation that, in the main, defendants will not choose to appear before grand juries in circumstances where the interactions are expected to be particularly adversarial. At the same time, we cannot ignore the fact that a defendant who exercises the statutory right to appear will already have been charged with a crime. That fact alone lends an inherently adversarial quality to a prosecutor's questioning of the defendant that is not present with respect to any other witness.

We also agree with relator that counsel's presence in the grand jury room during the defendant's testimony would lessen the risk of prejudice. In *State ex rel. Russell*, we found a constitutional right to the presence of counsel when there was only a low chance that counsel would be able to protect a defendant's interests. Regarding the right to counsel at a presentencing interview before a probation officer, this court noted that "little purpose" would often be served by the presence of counsel, and that later procedural opportunities meant that there "rarely" would be a "risk of irremediable harm" if counsel were absent. 293 Or at 317-18. "Yet, circumstances are conceivable where the presence of counsel would be helpful." *Id*. at 318. That was sufficient for this court to hold that the defendant had a right to have counsel present for the presentencing interview.

The same is also true for relator's testimony before the grand jury. At a minimum, counsel's presence means that relator may consult with a fully informed counsel, who will have directly heard the question and can provide relator with informed advice.

We note that there is a common practice of grand jury witnesses stationing their counsel outside the grand

jury room so that the counsel may be consulted during the witness's testimony. *See* Sara Sun Beale *et al.*, *Grand Jury Law and Practice* § 6:30 (Westlaw 2d ed Dec 2021 update) ("Generally a witness who has retained counsel is permitted a reasonable opportunity to consult with counsel outside the grand jury room before and during his testimony."). We do not think that the presence of counsel outside the grand jury room is a sufficient substitute for the presence of counsel inside the room for a defendant who has been charged and whose right to counsel has attached. An attorney who is not present must rely on a hearsay version of the question, one stripped of context, and relayed by a person who is unlikely to be educated in the law. An attorney who hears the question directly, and in the context in which it was asked, will be better equipped to provide advice.

We therefore agree with relator. Under Article I, section 11, a defendant's appearance before the grand jury, albeit voluntary, is a critical stage of the prosecution that triggers the constitutional right to have counsel present.

The state contends that that conclusion is inconsistent with this court's decision in *Miller*, 254 Or 244. The issue in that case was whether the defendant had validly waived his right to indictment by grand jury when he was unrepresented at the time. *Id*. at 247-48. This court considered whether the decision to waive indictment was a critical stage, and it held that it was not:

> "[United States Supreme Court case law requires] legal representation for an accused at a time when he must take steps or make a choice which is likely to have a substantial effect on the prosecution against him. We do not perceive that waiver of grand jury is such a choice, as we do not believe that such a waiver is actually determinative of whether criminal proceedings could or would be brought."

*Id*. at 249. This court then added:

> "Had defendant chosen to insist upon indictment, there is nothing that a lawyer could have done to represent him before the grand jury, because that is a closed and non-adversary proceeding. All that a lawyer could have done for him was warn him not to voluntarily testify in front of the grand jury where, while unrepresented, he would have

been subject to questioning by the district attorney and the grand jurors."

*Id*. The state focuses on the court's statement that, if a defendant did choose to voluntarily appear before the grand jury, he or she would be "unrepresented."

We think that the state reads too much into the words "while unrepresented." In general, the only time the defendant would be permitted to be in the grand jury room would be as a witness. But *Miller* was issued before any statute provided a defendant with a right to make such an appearance, and the court was not addressing focused arguments by a defendant whose right to counsel had attached and who sought to appear before the grand jury as a matter of right.

The state suggests that finding a right for counsel to be present in the grand jury room would imply that courts must also allow defense counsel to attend the entirety of the grand jury proceeding—or, more sweepingly, that defense counsel must be permitted to be present for any number of other events during an investigation and prosecution, such as police interviews of every witness. We disagree. We are addressing whether a defendant, who has *already* been charged, whose right to counsel has attached, and who is testifying under oath when questioned by the district attorney, is entitled to have counsel present in the room for that testimony. We have expressly held that "[c]ollecting and recording existing evidence does not require the presence of defense counsel." *State v. Tiner*, 340 Or 551, 564, 135 P3d 305 (2006), *cert den*, 549 US 1169 (2007) (no right to have counsel present for photographing of defendant's tattoos). Moreover, as the United States Supreme Court stated in *United States v. Ash*, 413 US 300, 93 S Ct 2568, 37 L Ed 2d 619 (1973):

> "'None of the classical analyses of the assistance to be given by counsel * * * suggests that counsel must be present when the prosecution is interrogating witnesses in the defendant's absence even when, as here, the defendant is under arrest; counsel is rather to be provided to prevent the defendant himself from falling into traps devised by a lawyer on the other side and to see to it that all available defenses are proffered.'"

413 US at 316-17 (quoting *United States v. Bennett*, 409 F2d 888, 899-900 (2d Cir), *cert den*, 396 US 852 (1969) (Friendly, J.)); *see also Ash*, 413 US at 312 ("In all cases considered by the Court, counsel has continued to act as a spokesman for, or advisor to, the accused.").

We have agreed with relator that he has the right to have counsel *present* in the grand jury room during his testimony. But relator also asserts that he is also entitled to have counsel conduct the direct examination of him and then make formal evidentiary objections to the district attorney's questions. Relator does not anchor those assertions in any authority beyond the constitutional right to counsel generally, and we do not agree that the right to the presence of counsel necessitates the expansive role that relator envisions. The statutes contemplate that the questioning in the grand jury room will be done by the prosecutor and the grand jurors, ORS 132.340; *see Miller*, 254 Or at 249, and there is no judge present to rule on evidentiary objections, *see* ORS 132.090 (listing limited set of persons who may be present during grand jury proceedings). The legislative history furthermore shows that, when the legislature created a charged defendant's right to voluntarily testify before the grand jury, it declined to create a process of direct and cross examinations. Providing for questioning to be done by anyone else would effect a significant and disruptive change to the grand jury process that the legislature rejected and that is not necessary to vindicate the right that Article I, section 11, protects. That right functions as a shield, *see Prieto-Rubio*, 359 Or at 25 (right to presence of counsel is to "prevent prejudice to a defendant"): It protects defendants against questioning that could cause them to make admissions against their interest, waive a privilege, or otherwise prejudice their defense at trial. As such, that constitutional right is vindicated by having counsel present who can hear the questions that are asked, advise and direct the client with respect to answering them, and, if necessary, advise the client to terminate the testimony.

### III.   CONCLUSION

For the foregoing reasons, we conclude that, when a defendant seeks to testify before a grand jury under ORS

132.320(12), the defendant has a state constitutional right to have counsel present in the grand jury room for consultation during the defendant's testimony. Counsel may advise or direct the defendant as to questions that are asked, but performance of the consultative function does not extend to examining the defendant or any other witness.

A peremptory writ will issue.