362 March 5, 2025 No. 177

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DANNY JOE PEDERSEN,
*Defendant-Appellant.*

Yamhill County Circuit Court
21CR33854; A181064

Cynthia L. Easterday, Judge.

Argued and submitted November 20, 2024.

Daniel C. Silberman, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Oregon Public Defense Commission.

Greg Rios, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Aoyagi, Presiding Judge, Egan, Judge, and Joyce, Judge.

AOYAGI, P. J.

Affirmed.

**AOYAGI, P. J.**

Defendant appeals a judgment of conviction for fleeing or attempting to elude a police officer, ORS 811.540(1)(b)(A), and reckless driving, ORS 811.140. The sole issue on appeal is whether defendant was denied counsel at a critical stage of the proceedings, in violation of his state and federal constitutional rights to counsel. After defendant was charged and before an attorney was appointed to represent him, the trial court held what it described as an arraignment, at which defendant spelled his last name and stated his date of birth, the court read the charges, and the court gave defendant the name and phone number of the attorney being appointed to represent him and told him his next hearing date. Nothing else occurred. Defendant argues that an arraignment is necessarily a critical stage of criminal proceedings, such that his right to counsel was violated, and he seeks reversal of his convictions. The state counters that the claim of error is unpreserved, that the hearing was not really an arraignment because no pleas were taken, and that what did occur was not a critical stage of the proceedings.

As explained below, regarding preservation, we agree with defendant that it would be unreasonable to expect him to personally object to the lack of counsel. Once counsel was appointed, however, an objection needed to be made within a reasonable time to preserve the claim of error. Counsel never made any objection to the partial arraignment that occurred immediately before her appointment, despite necessarily being aware of it, so the claim of error is unpreserved. As for plain error, we conclude that the hearing at issue was not a critical stage, so no error occurred, plain or otherwise. Whether a particular pretrial hearing was a critical stage of the proceedings depends on what actually occurred at the hearing, not generalizations. The hearing that occurred here was not a critical stage of the proceedings under the applicable state and federal standards for what constitutes a critical stage. Accordingly, we affirm.

## I.  FACTS

In July 2021, defendant was indicted for fleeing or attempting to elude a police officer and reckless driving. He

was later arrested and released on a security agreement. On April 22, 2022, the trial court held a hearing docketed as "arraignment." The court told defendant that he was there "to be arraigned on an indictment." It asked defendant to spell his last name and state his date of birth, which defendant did. It stated that it was appointing an attorney to represent defendant, would do so "right away," and gave defendant the name and telephone number of that attorney. It then read the charges. The court concluded, "All right. And so he's been arraigned." It set the next hearing for May 26, 2022, at 9:30 a.m., told defendant that he would be arrested if he did not appear, and reminded him to obey the law while on release.

Less than an hour after the hearing ended, an order was entered on the court register appointing counsel for defendant. Less than two hours after that, defendant's appointed counsel filed a discovery request and a speedy-trial request.

On May 26, 2022, defendant appeared with counsel for a hearing docketed as "plea hearing." Not-guilty pleas on both charges were entered on the court register at 9:48 a.m. The court then began what it called "the first status conference" and asked the parties how they wanted to proceed. Defendant's counsel asked for a trial date. The court offered a date that the parties accepted, set trial-related deadlines, told defendant that it was important to stay in touch with his attorney, and concluded the hearing at 9:50 a.m.

Defendant's trial was held in February 2023. The jury found him guilty on both charges. On appeal, defendant seeks reversal of his convictions, arguing that it violated his state and federal constitutional right to counsel to require him to represent himself at the hearing on April 22, 2022.

## II.  ANALYSIS

The right to counsel is recognized in both the state and federal constitutions. Article I, section 11, of the Oregon Constitution provides, "In all criminal prosecutions, the accused shall have the right to *** be heard by himself and counsel." The Sixth Amendment to the United States Constitution provides, "In all criminal prosecutions, the

accused shall enjoy the right \*\*\* to have the assistance of counsel for his defense."

The right to counsel attaches "as early as the commencement of criminal proceedings by indictment or other formal charge." *State v. Prieto-Rubio*, 359 Or 16, 24, 376 P3d 255 (2016). Once attached, the defendant has the right to counsel at all "critical stages" of the prosecution, including critical pretrial stages. *Id.*; *see also United States v. Ash*, 413 US 300, 310, 93 S Ct 2568, 37 L Ed 2d 619 (1973) (explaining that the right to counsel used to apply only at trial but has been extended to pretrial events as a result of "changing patterns of criminal procedure and investigation that have tended to generate pretrial events that might appropriately be considered to be parts of the trial itself"). Under Oregon law, a critical stage occurs when a defendant "must take steps or make a choice which is likely to have a substantial effect on the prosecution against him." *State v. Miller*, 254 Or 244, 249, 458 P2d 1017 (1969). Under Sixth Amendment law, a critical stage occurs "at any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial"—or, in more concrete terms, when "potential substantial prejudice to defendant's rights inheres in the particular confrontation" and counsel may "help avoid that prejudice." *United States v. Wade*, 388 US 218, 226-27, 87 S Ct 1926, 18 L Ed 2d 1149 (1967).

In this case, the parties agree that defendant's right to counsel had attached, but they disagree as to whether the hearing held on April 22, 2022, was a critical stage of the proceedings. They also disagree as to whether the claim of error is preserved.

A.   *Preservation*

We begin with the threshold matter of preservation. "Generally, an issue not preserved in the trial court will not be considered on appeal." *State v. Wyatt*, 331 Or 335, 341, 15 P3d 22 (2000). Preservation may be excused, however, if a party had "no practical ability to raise an issue." *Peeples v. Lampert*, 345 Or 209, 220, 191 P3d 637 (2008). We also have discretionary authority to correct errors that are

unpreserved but "plain." ORAP 5.45(1); *State v. Gornick*, 340 Or 160, 166, 130 P3d 780 (2006).

Defendant argues that preservation should be excused, relying on *State v. Cole*, 323 Or 30, 912 P2d 907 (1996), which involved an unrepresented defendant's waiver of counsel. As a general rule, *pro se* litigants are "bound by the same preservation rules" as all other parties. *State v. Morrow*, 192 Or App 441, 444, 86 P3d 70, *rev den*, 337 Or 282 (2004). However, in *Cole*, the court adopted an exception for waiver of counsel: "A defendant whose waiver of counsel is accepted without first being apprised of the risks of self-representation cannot be expected to object to acceptance of that waiver on the ground that he or she was not apprised of those risks." 323 Or at 36. That exception to the preservation requirement for *pro se* criminal defendants is "explicitly limited to the waiver of counsel." *Morrow*, 192 Or App at 445.

Defendant never waived counsel, so *Cole* is not directly on point, but defendant argues that it supports excusing preservation in this situation too. The state counters that *Cole* is inapposite and that defendant needed to object at the April 22 hearing. Recognizing the "pragmatic" and "prudential" nature of preservation rules, *Peeples*, 345 Or at 220, we conclude that the answer lies between the parties' positions.

On the one hand, we agree with defendant that it would be unreasonable to expect him to personally object to the lack of counsel at the April 22 hearing. It is simply untenable to expect a party awaiting the appointment of counsel to know to raise a constitutional objection to the timing of that appointment. We therefore disagree with the state that defendant needed to object at the April 22 hearing to preserve his claim of error.

On the other hand, we disagree with defendant that, because he could not be expected to object at the April 22 hearing, he was excused altogether from preserving the claim of error. An immediate objection is not always required to preserve error. In appropriate circumstances, an objection may be timely even if it is not immediate, so long as the "practical purposes of preservation were

served." *State v. Quebrado*, 372 Or 301, 304, 549 P3d 524 (2024) (holding that the defendant's motion for a mistrial was timely, despite being filed several days after the state rested, in part because "no significant event occurred in the trial" in the interim); *see also, e.g.*, *Dept. of Human Services v. M. E.*, 297 Or App 233, 241, 441 P3d 713 (2019) (declining to excuse preservation, where the mother in a termination-of-parental-rights case did not have an opportunity to object beforehand to a court order continuing the appointment of a guardian *ad litem*, but could have objected at a hearing held a month later or anytime in the six months before the termination trial).

Here, counsel was appointed less than an hour after the April 22 hearing and made a filing on defendant's behalf the same day. Counsel then appeared with defendant at the May 26 hearing. Certainly, by then, counsel must have been aware that defendant was partially arraigned prior to counsel's appointment. If counsel took issue with that having occurred, then counsel should have objected within a reasonable time of appointment—either in writing or at the May 26 hearing—and the court would have been hard pressed under the circumstances to treat the objection as untimely. Instead, defendant entered not-guilty pleas, requested a trial date, proceeded to trial, was found guilty by a jury, and only then raised a concern about the arraignment procedure.

We therefore conclude that defendant failed to preserve his claim of error. Objecting to the arraignment procedure within a reasonable time after counsel was appointed would have given the trial court an opportunity to promptly address any constitutional or other concerns *before* the case proceeded to trial. Because the claim of error is unpreserved, we are limited to plain-error review, ORAP 5.45(1), which defendant expressly requests in the event that preservation is not excused.

B.   *Critical Stage of the Proceedings*

Defendant claims that it plainly violated his constitutional right to counsel to arraign him on April 22, 2022, before appointing counsel. An error is "plain" when it is an error of law, the legal point is obvious and not reasonably

in dispute, and the error is apparent on the record without our having to choose among competing inferences. *State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013). The state does not dispute that the first and third requirements are met here. The point of contention is whether it is obvious and not reasonably in dispute that the April 22 hearing was a critical stage of the proceedings. Defendant contends that it is, whereas the state disagrees.

To set the stage for our discussion, we first describe the statutory framework for arraignments in Oregon. With respect to timing, ORS 135.010 provides:

> "When the accusatory instrument has been filed, and if the defendant has been arrested, or as soon thereafter as the defendant may be arrested, the defendant shall be arraigned thereon as provided in ORS 135.030 before the court in which it is found. Except for good cause shown or at the request of the defendant, if the defendant is in custody, the arraignment shall be held during the first 36 hours of custody, excluding holidays, Saturdays and Sundays. In all other cases, except as provided for in ORS 133.060 [(which allows up to 30 days for arraignment on a criminal citation)], the arraignment shall be held within 96 hours after the arrest."

As for the scope of the proceeding, "[t]he arraignment consists of reading the accusatory instrument to the defendant, causing delivery to the defendant of a copy thereof and indorsements thereon, including the list of witnesses indorsed on it or appended thereto if the accusatory instrument is an indictment, [and] asking the defendant how the defendant pleads to the charge." ORS 135.020. Additionally, the defendant must be informed that, "[i]f the name by which the defendant is charged in the accusatory instrument is not the true name of the defendant the defendant must then declare the true name," or else "the defendant is ineligible for any form of release other than a security release under ORS 135.265."[1] ORS 135.060(1); *see*

---

[1] "If the defendant gives no other name, the court may proceed against the defendant by the name in the accusatory instrument." ORS 135.065(1). If the defendant alleges that the name in the information or indictment is not their true name, the court is to attempt to determine the true name—including, if no birth certificate was ever issued, asking the defendant for their true name under oath or affirmation—and then "proceed under the name given unless the court is persuaded by a preponderance of the evidence that the name is not the defendant's

ORS 135.060(3) (defining "true name" as either the name on the defendant's certified birth record, the defendant's birth name, or the defendant's name as changed by court order or by operation of law). True-name acknowledgement at arraignment "may not be used against the defendant at trial on the underlying charge or any other criminal charge or fugitive complaint," except that the use of different names in different proceedings "can be used in determining the defendant's release status," and intentionally giving a false name is prosecutable as perjury if done under oath or affirmation. ORS 135.060(2).

Arraignment also provides an opportunity to move to set aside or dismiss the accusatory instrument or to demur. "A motion to set aside the indictment or dismiss the accusatory instrument shall be made and heard at the time of the arraignment or within 10 days thereafter, unless for good cause the court allows additional time." ORS 135.520. A "demurrer shall be entered either at the time of the arraignment or at such other time as may be allowed to the defendant for that purpose." ORS 135.610(1).

Notably, the trial court is statutorily required to advise the defendant of the right to counsel *before* proceeding with an arraignment: "If the defendant appears for arraignment without counsel, the defendant *shall be informed by the court* that it is the right of the defendant to have counsel *before being arraigned* and shall be asked if the defendant desires the aid of counsel." ORS 135.040 (emphases added). If the defendant wants counsel and is eligible, the court must appoint counsel. ORS 135.045(1)(b). If the defendant does not want counsel, "the court shall determine whether the defendant has made a knowing and voluntary waiver of counsel." ORS 135.045(1)(c). However, only represented defendants may plead guilty or no contest to a felony on their arraignment day. ORS 135.380(2) ("A defendant may plead guilty or no contest on the day of arraignment or any time thereafter except that a defendant without counsel

---

true name." *Id*. "[T]he subsequent proceedings on the accusatory instrument may be had against the defendant by that name, referring also to the name by which the defendant is charged." *Id*. However, upon the defendant's motion, "all names, other than the true name of the defendant, shall be stricken from any accusatory instrument read or submitted to the jury." ORS 135.065(2).

shall not be allowed to plead guilty or no contest to a felony on the day of arraignment.").

With that statutory framework for arraignments in mind, we turn to the parties' specific arguments. Defendant argues that an arraignment is necessarily a critical stage of criminal proceedings, regardless of how any particular arraignment is conducted, such that the defendant always has a constitutional right to counsel at an arraignment. The state disagrees. It does not dispute that an arraignment conducted in accordance with the Oregon statutory requirements outlined above would be a critical stage of the proceedings. It argues, however, that the April 22 hearing was not really an arraignment because no pleas were taken and that, based on what actually occurred, it was not a critical stage of the proceedings.

Given how the parties have framed their arguments and the particular record in this case, the most important issue on appeal turns out to be a somewhat technical one— whether the "critical stage" determination is case-specific and circumstance-specific as the state argues, or more generalized as defendant argues. Although we recognize that defendant's argument finds support in our vacated opinion in *State v. Brooks*, 301 Or App 419, 456 P3d 665 (2019), *vac'd and rem'd*, 368 Or 168, 486 P3d 794 (2021), we conclude that the state is correct that the determination is case-specific and circumstance-specific. That view finds strong support in the case law, including Oregon Supreme Court and United States Supreme Court case law.

Existing case law establishes some types of pretrial events as critical stages of a criminal proceeding for right-to-counsel purposes. *See, e.g.*, *Argersinger v. Hamlin*, 407 US 25, 34, 92 S Ct 2006, 32 L Ed 2d 530 (1972) (taking a guilty plea); *Missouri v. Frye*, 566 US 134, 144, 132 S Ct 1399, 182 L Ed 2d 379 (2012) (plea negotiations); *Massiah v. United States*, 377 US 201, 206, 84 S Ct 1199, 12 L Ed 2d 246 (1964) (post-indictment interrogation). However, "not all pretrial proceedings require the presence of defense counsel." *State v. Gray*, 370 Or 116, 129, 515 P3d 348 (2022). Once the right to counsel attaches, "the court may evaluate the particular circumstances, the nature of the evidence, and the like to

determine the scope of the right to counsel." *State v. Davis*, 350 Or 440, 478, 256 P3d 1075 (2011). Thus, for example, the Oregon Supreme Court has held that it was a critical stage in the criminal proceedings when a defendant was asked to submit to a breathalyzer test while under arrest and in formal custody, *State v. Spencer*, 305 Or 59, 74-75, 750 P2d 147 (1988); that it was not a critical stage in the criminal proceedings when the state took photographs of a defendant's tattoos while he was in custody post-indictment, *State v. Tiner*, 340 Or 551, 563-64, 135 P3d 305 (2006), *cert den*, 549 US 1169 (2007); and that interrogation of the defendant regarding an uncharged crime was a critical stage of the proceedings as to an existing charged crime, where the crimes were "sufficiently related," *Prieto-Rubio*, 359 Or at 36-37.

As for arraignments specifically, the United States Supreme Court held in *Hamilton* that an arraignment conducted in accordance with Alabama law was a critical stage of the proceedings because certain defenses were lost by not being asserted and because a plea was taken. *Hamilton v. Alabama*, 368 US 52, 53, 82 S Ct 157, 7 L Ed 2d 114 (1961). However, the court did not adopt a bright-line rule that any hearing designated by the court as an "arraignment" is a critical stage. To the contrary, it recognized that arraignment procedures differ by jurisdiction and that what happens at such a hearing is what determines whether it is a critical stage. *Id.* at 54 ("Whatever may be the function and importance of arraignment in other jurisdictions, we have said enough to show that in Alabama it is a critical stage in a criminal proceeding." (Footnote omitted.)); *id.* at 54 n 4 (noting the "differing consequences" of arraignments in different jurisdictions).

Applying that principle, the Washington Court of Appeals recognized in *In re Sanchez*, 197 Wash App 686, 701-02, 391 P3d 517 (2017), that a fact-specific inquiry was necessary to decide whether the defendant's arraignment was a critical stage in the criminal proceedings against him:

> "As illustrated by the *** United States Supreme Court cases, the characterization of [defendant's] hearing as an arraignment is not determinative of whether the hearing was a critical stage so that defense counsel's absence was presumptively prejudicial. Rather, we must examine the

> nature of [defendant's] arraignment before we can deter-
> mine whether it was a critical stage. Only if the nature of
> his arraignment was such that he stood to lose important
> rights that might affect the outcome of his case should it be
> considered a critical stage."

Similarly, in *Miller*, 254 Or at 255, the Oregon Supreme Court
relied on the individual defendant's circumstances to conclude
that his arraignment was not a critical stage of the proceed-
ings, even though he entered a plea while unrepresented,
where that plea was later set aside and he then "still had
available, at a time when he was represented, all means for
attacking the information which had existed at the time of his
arraignment."

We are therefore convinced that the "critical stage"
determination is case-specific and circumstance-specific.
Such an approach makes sense. To exaggerate to make the
point, it would make little sense to say that a defendant's con-
stitutional right to counsel was violated by holding a hearing
at which literally nothing occurred, on the theory that, had
the hearing been conducted differently (say in accord with the
governing statutes), something critical would have occurred.

We decline to readopt the contrary view implicit in
our vacated opinion in *Brooks*, as defendant urges us to do.
In *Brooks*, the trial court held a hearing similar to the one
in this case, except that the defendant was represented by
counsel. 301 Or App at 421. The issue on appeal was whether
the defendant's constitutional right to self-representation—
which is incorporated into the constitutional right to coun-
sel—was violated at the hearing. *Id*. We held that it was
not, because the defendant made an equivocal request for
self-representation at an early stage of the proceedings, and
the trial court permissibly deferred considering it for a short
time so that the defendant could consult with his appointed
counsel. *Id*. at 428-29.

As a preliminary step en route to that holding, we
explained that the right to counsel had attached by the time
of the hearing, and that the hearing was a "critical stage"
of the proceedings. *Id*. at 425. On the latter point, we rea-
soned somewhat summarily that "[t]he arraignment con-
templated by statute clearly is a critical stage of a criminal

proceeding"; the hearing at issue had "all the hallmarks of an arraignment" except for the taking of a plea; and, thus, the hearing was a critical stage. *Id.* In the alternative, we reasoned that it was a critical stage because the defendant was called upon to state his name, which we said has "serious consequences" under ORS 135.060. *Id.* at 426.

The Supreme Court vacated our opinion in *Brooks* based on the guilty verdicts having been nonunanimous, 368 Or at 168, so *Brooks* is no longer precedential. Vacatur "is an extraordinary action justified by the reviewing court's determination that the lower court's decision should not remain 'on the books,' so to speak, as binding precedent, for reasons that are generally unrelated to the merits." *Association of Oregon Corrections Employees v. DOC*, 266 Or App 496, 511, 337 P3d 998 (2014); *see also State v. Mott*, 370 Or 830, 845, 527 P3d 758 (2023) (a published Court of Appeals decision remains precedential even if the appeal is later dismissed, "unless vacated"). Its only value is therefore persuasive, not precedential.[2] And, given our foregoing analysis, we do not find *Brooks* persuasive that any hearing deemed an "arraignment" is a "critical stage," regardless of what actually occurred at the hearing.

Accordingly, we proceed with the understanding that what matters for constitutional right-to-counsel purposes is what actually occurred at the hearing on April 22, 2022, not what the hearing was called or what "should" happen at an Oregon arraignment as a statutory matter. Defendant is not claiming that his arraignment was untimely or procedurally defective under ORS 135.010, so it does not matter for purposes of this appeal whether the April 22 hearing was truly an arraignment. What matters is whether it was a critical stage of the proceedings, based on what actually occurred.

---

[2] Defendant insists that *Brooks* remains binding authority. He points to various decisions in which we have cited to vacated opinions. Having reviewed those decisions, none are inconsistent with a vacated opinion being persuasive authority, rather than binding precedent. Although we do not always say so expressly—and perhaps we should—when we cite a vacated opinion, we are necessarily relying on it as persuasive authority, because that is all it has. *See, e.g.*, *State v. Slagle*, 297 Or App 392, 395-96, 441 P3d 644, *rev den*, 365 Or 557 (2019) (relying on a vacated opinion and subsequent opinions that followed it); *State v. Dizick*, 285 Or App 1, 7, 395 P3d 945, *rev den*, 362 Or 281 (2017) (relying on a vacated opinion). By citing an opinion after it has been vacated, we effectively readopt the cited reasoning because we find it persuasive.

Three things happened at the April 22 hearing: (1) the court asked defendant to spell his last name and state his birthdate, which defendant did; (2) the court gave defendant the name and phone number of the attorney who was going to be appointed to represent him; and (3) the court read the charges from the indictment.

It is readily apparent that neither the court giving defendant the name and number of his soon-to-be-appointed attorney, nor the court reading the charges, made the hearing a critical stage of the proceedings. Neither event required defendant to "take steps or make a choice" that was "likely to have a substantial effect on the prosecution against him," *Miller*, 254 Or at 249, or posed "potential substantial prejudice" to defendant's rights that counsel could have helped avoid, *Wade*, 388 US at 227.

As for defendant spelling his last name and stating his birthdate, the trial court never asked defendant whether the name used in the indictment ("Danny Joe Pedersen") was his true name or informed him that, if it was not, he needed to declare this true name to be eligible for forms of release other than security release. Nonetheless, both parties treat the request that defendant spell his last name and state his birthdate as equivalent to the "true name" procedure in ORS 135.060, so we do the same.

Defendant describes having to "represent that he was truly named" as a "critical decision" with "a significant impact on the prosecution."[3] He never explains how spelling his last name was a "critical decision," however, or how it had any impact on the prosecution. Instead, he relies entirely on our vacated opinion in *Brooks*. *See Brooks*, 301 Or App at 426 (describing defendant's name as a "critical fact," given the release limitations in ORS 135.060 for a defendant who does not declare his true name, and concluding that the true-name acknowledgement was therefore "a critical stage of the proceeding to which the scope of the right to counsel applies"). We do not find *Brooks* persuasive on that point,

---

[3] Specifically, defendant argues that "the arraignment qualified as a 'critical stage'" because "it was a hearing at which defendant had to enter a plea and represent that he was truly named, which are critical decisions that have a significant impact on the prosecution." Defendant did not enter any plea at the April 22 hearing, so we discuss only the true-name argument.

particularly because it is apparent from the brief explanation of our reasoning that we were not approaching the issue in a fact-specific and circumstance-specific way, as we have now recognized and explained is required. *See id*.

We are unpersuaded that defendant spelling his last name on April 22 was a critical stage of the proceedings. Defendant had already posted bail and entered into a security release agreement when he appeared at the April 22 hearing, so his eligibility for other forms of release was not at issue.[4] And ORS 135.060(2) expressly provides that a true-name acknowledgement at arraignment "may not be used against the defendant at trial on the underlying charge or any other criminal charge or fugitive complaint," subject to two narrow exceptions not utilized here. One exception is that the use of different names in different proceedings may be considered as relevant to release status, ORS 135.060(2)(a), but no such consideration occurred here. The other exception is that a defendant may be prosecuted for perjury for intentionally giving a false name under oath or affirmation, ORS 135.060(2)(b), but defendant was not under oath or affirmation at the April 22 hearing. Under the circumstances, defendant spelling his last name and stating his birthdate did not make the April 22 hearing a critical stage of the proceedings.

We therefore conclude that the hearing held on April 22, 2022, was not a critical stage of the proceedings against defendant, under the state or federal standard, such that defendant had a constitutional right to counsel at that hearing. Nothing that actually occurred at the hearing made it a critical stage. As for things that did *not* occur, had counsel been present, defendant likely would have entered his pleas then, instead of having to wait until the next hearing, and counsel theoretically could have filed a demurrer to the indictment. But, on this record, defendant was not prejudiced by waiting to enter his pleas until counsel was appointed, nor was he prejudiced by counsel not being

---

[4] For present purposes, we assume *arguendo* that a decision that affects a person's release status is one that "is likely to have a substantial effect *on the prosecution against him*[,]" *Miller*, 254 Or at 249 (emphasis added), or that "might derogate from the accused's *right to a fair trial*[,]" *Wade*, 388 US at 226 (emphasis added). The parties have not addressed that issue, and we express no opinion on it.

present at the hearing to file a demurrer, where no demurrer was ever filed and there is no reason to believe that the trial court would have rejected a demurrer filed promptly by counsel. *See* ORS 135.610 ("[A] demurrer shall be entered either at the time of the arraignment or at such other time as may be allowed to the defendant for that purpose.").

Although it is certainly preferable that a criminal defendant have counsel at any pretrial hearing, nothing that did or did not happen at the hearing on April 22, 2022, had a substantial effect on the prosecution or derogated from defendant's right to a fair trial. That hearing therefore was not a "critical stage" of the proceedings for purposes of the right to counsel under Article I, section 11, or the Sixth Amendment. It follows that defendant's constitutional right to counsel was not violated.

Affirmed.